UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PERRY VILAS BOWMAN,

    Plaintiff,

v.                                      Case No. 17-cv-1513-pp

AGNES DUBOIS and NATHAN NELSON,

    Defendants.

**ORDER GRANTING THE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2), DENYING THE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 4), DENYING THE PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (DKT. NO. 5), DENYING AS MOOT THE PLAINTIFF'S MOTION FOR ORDER TO USE RELEASE ACCOUNT TO COVER PARTIAL COSTS OF FILING FEE (DKT. NO. 9) AND SCREENING THE PLAINTIFF'S COMPLAINT (DKT. NO 1)**

      Until July of 2018, plaintiff Perry Vilas Bowman was a prisoner in the Wisconsin prison system, and he is representing himself in this case. In the fall of 2017, he filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights by: 1) improperly revoking his extended supervision; 2) not crediting his time served; 3) subjecting him to unconstitutional restrictions during his extended supervision; 4) not allowing him to participate or have representation at a meeting where the community notification level regarding his sexual offense was determined for his extended supervision; and 5) not allowing him to be involved in any due process proceeding regarding his "discretionary" GPS monitoring for life. Dkt. No. 1. He also moved for leave to proceed without prepaying the filing fee, dkt. no. 2, for

permission to use his release account to pay his partial filing fee, dkt. no. 9, for a temporary restraining order, dkt. no. 5, and for the court to appoint a lawyer to represent him, dkt. no. 4.

I. **Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2); Motion to Utilize Release Account to Pay Initial Partial Filing Fee (Dkt. No. 9)**

The Prison Litigation Reform Act (PLRA) applies to this case, because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. The PLRA allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without prepaying the case filing fee, if he meets certain conditions. One of those conditions is that the plaintiff pays an initial partial filing fee. 28 U.S.C. §1915(b).

On November 6, 2017, the court ordered the plaintiff to pay an initial partial filing fee of $4.40. Dkt. No. 10. The court received that fee on November 14, 2017. The court will grant the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. no. 2. Because the court has received the fee, and because the Wisconsin Inmate Locator shows that the plaintiff was released from custody on July 19, 2018, the court will deny as moot his motion to use release account funds to pay his partial filing fee. Dkt. No. 9. The court will require the plaintiff to pay the remainder of the filing fee over time as set forth at the end of this decision.

II. **Screening the Plaintiff's Complaint (Dkt. No. 1)**

The law requires the court to screen complaints brought by prisoners

seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint's allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

To proceed under 42 U.S.C. §1983, a plaintiff must allege that: 1) someone deprived him of a right secured by the Constitution or laws of the United States; and 2) the person who deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

A. <u>Factual Allegations</u>

The complaint alleges that the plaintiff committed some offenses in the early 2000s, and that he was released to extended supervision on March 18, 2014. Dkt. No. 1 at 4, 5. Defendant Agnes Dubois was his supervising agent. <u>Id.</u>

The plaintiff explained that usually, about a month before a sex offender is to be released, the inmate has an opportunity to challenge "the level of community notification;" he stated that the inmate gets to present evidence, and to have the assistance of counsel and a psychological evaluation. <u>Id.</u> at 5. The plaintiff alleged that he was not given the opportunity to challenge the level of community notification assigned to him, to have an attorney represent him to challenge the level or to have a psychological evaluation conducted so that he could present it as evidence for the proceeding. <u>Id.</u> The plaintiff also alleged that he was "never advised that he [would] be subjected to" GPS monitoring for life. <u>Id.</u> The plaintiff alleged that Dubois "never had him involved in any type of due process hearing" for his assigned level of community notification or for his imposed GPS monitoring for life, <u>id.</u> at 4, "which [Dubois] called 'discretionary'" <u>id.</u> at 5.

The plaintiff claimed that Dubois informed him that she was "changing her rules of him to be more restrictive even though they do not fit his criminality in the least;" he does not say when this occurred. <u>Id.</u> at 4. The plaintiff stated that he told Dubois, at some point, that he did not agree with her previous treatment of him and that she had informed him that he would have "the exact same type

4

of rules that she had on him in the past." Id. He asserted that "Dubois did not want him to have contact with his family" and that "she did not care" that his family was "his support system." Id. at 5.

The plaintiff complained that Nelson, a supervisor at the Division of Community Corrections, was aware of but ignored his dissatisfaction with Dubois and that Nelson refused to provide him with a new agent despite the fact that Dubois was "hindering [the plaintiff's] rehabilitative goals." Id. at 4. The plaintiff asserted that his family contacted Nelson about Dubois's treatment of him, but that Nelson ignored them. Id.

At some point, the plaintiff's extended supervision was revoked; he did not say when. Id. at 4. But the plaintiff indicated that prior to that revocation, Dubois had someone named Dr. Dickey evaluate him for an alternative to revocation. Id. at 5. The plaintiff maintained that Dr. Dickey evaluated him despite the plaintiff telling Dubois that Dr. Dickey would not be "un-biased and impartial towards him" because of his "prior run-ins" with Dr. Dickey. Id. The plaintiff asserted that Dr. Dickey "did not examine him for his Release back into the Community nor did he evaluate him for the GPS for Life criteria that he was never advised that he was to be subjected to." Id. The plaintiff alleged that Dickey saw him only to consider an alternative to revocation, but that if he'd conducted a full evaluation, he would have been able to determine the plaintiff's actual risk to reoffend. Id.

The plaintiff explained "that in the end, [Dubois] revoked him," without

giving him an opportunity for an alternative to revocation. Id. at 4. He also alleged that neither Dubois or Nelson provided him with any of the following three post-revocation hearings: good time forfeiture hearing, re-incarceration hearing and re-confinement hearing. Id. The plaintiff also asserted that Dubois never credited him for the time he served while he was and was not being monitored by GPS. Id. at 5.

Anticipating that he soon would be released again for extended supervision, the plaintiff asserted that a few months before that release, a "CORE Meeting will be conducted for him." Id. at 6. He asserted that the CORE meeting would include ". . . Dubois, . . . Nelson, local law enforcement, and a Sex Offender Specialist." Id. The plaintiff predicted that he would not be allowed to participate in this meeting or to have a lawyer represent him. Id.

The Department of Corrections Inmate Locator service indicates that on January 2, 2018, the plaintiff was released on extended supervision. https://appsdoc.wi.gov/lop/detail.do. On June 17, 2018, he entered the Shawano County Jail; on June 20, 2018, he was admitted to the Racine Correctional Institution on an alternative to revocation. Id. He was released from Racine on July 19, 2018; his status shows that he is on active community supervision. Id.

The complaint seeks injunctive relief along with compensatory and punitive damages.

B.  The Court's Analysis

The plaintiff listed on the second page of his complaint his causes of action: First Amendment violations, Fifth Amendment violations, Eighth Amendment violations, Fourteenth Amendment violations, double jeopardy violations, substantive due process violations and procedural due process violations. Id. at 2.

The court believes that the plaintiff is alleging that the defendants violated his civil rights under 42 U.S.C. §1983. So, as explained above, he must allege sufficient facts to show that the defendants deprived him of rights guaranteed by the Constitution, and that the defendants were acting under color of state law when they did so.

Some of the plaintiff's allegations challenge things that had happened in the past: his allegations that the defendants failed to provide him with required hearings, or with the assistance of counsel, fall into this category. But some of the plaintiff's allegations predicted future violations, and he asked for prospective relief (that he be afforded an opportunity to be heard on his risk to re-offend). The court will consider the two categories of claims separately.

1.  Allegations of past violations

The plaintiff alleges that prior to his release from serving his sentence on the crimes from the early 2000s, Dubois failed to allow him a hearing regarding community notification, or the life GPS monitoring provision. He alleges that he did not have the opportunity to actively challenge the level of community

notification; he did not have the assistance of a lawyer for that purpose, or a psychological evaluation. He says that had someone conducted a full, pre-release screening, they would have been able to determine his actual risk to re-offend; presumably this is relevant to his claim that he did not get to challenge the level of community notification or the need for the GPS monitoring provision.

The court construes this claim as a claim that Dubois violated his Fourteenth Amendment right against being deprived of "life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, §1. In evaluating a Fourteenth Amendment due process claim, the court must decide "whether the plaintiff was deprived of a protected property interest; if so, [the court] must determine what process was due under the circumstances." Murphy v. Rychlowski, 868 F.3d 561, 565 (7th Cir. 2017) (quoting Hess v. Bd. of Trs. Of S. Ill. Univ., 839 F.3d 668, 673 (7th Cir. 2016)).

It is difficult, given the few facts that the plaintiff alleges, to determine whether the plaintiff's allegations, if proven, would state a Fourteenth Amendment claim. Cases such as Conn. Dept. of Public Safety v. Doe, 538 U.S. 1 (2003) and Murphy, 686 F.3d 561 (7th Cir. 2017) raise questions about whether the Constitution entitles a sex-offender to a pre-release hearing on dangerousness. But at this early stage, the court will allow the plaintiff to proceed on a claim that Dubois violated his Fourteenth Amendment due process rights by failing to give him a pre-release hearing, where he could be represented by counsel and have the benefit of a psychological evaluation.

8

Next, the plaintiff appears to argue that his extended supervision should not have been revoked, that he did not receive the appropriate process for the revocation, and that he should have gotten credit against the revocation for his time on GPS for life. Specifically, he asserts that the defendants revoked his extended supervision without providing him an alternative to revocation or any of three specific post-revocation hearings. He alleges that Dubois failed to credit him for the time he served while he was and was not under GPS monitoring.

To the extent that the plaintiff is arguing that his extended supervision should not have been revoked, or that the revocation sentence was too long, he cannot bring those claims in a §1983 lawsuit. He needed to bring that claim in a *habeas corpus* petition under 28 U.S.C. §2254. "State prisoners who want to challenge their convictions, their sentences, or administrative orders revoking good-time credits or equivalent sentence-shortening devices, must seek habeas corpus, because they contest the fact or duration of custody." Moran v. Sondalle, 218 F.3d 647, 650-51 (7th Cir. 2000) (citing Preiser v. Rodriguez, 411 U.S. 475 (1973); Edwards v. Balisok, 520 U.S. 641 (1997)). A party must raise a claim in *habeas corpus* when the success of the claim would necessarily imply the invalidity of the plaintiff's confinement or require adjustment to his confinement's duration. Helman v. Duhaime, 742 F.3d 760, 762 (7th Cir. 2014). The court will not allow the plaintiff to proceed on those claims in this lawsuit.[1]

---

[1] The court also suggests that the plaintiff review 28 U.S.C. §2244(d), which explains that there is a one-year deadline for filing *habeas* petitions. The law describes the events that start the one-year clock running.

To the extent that the plaintiff argues that the defendants violated his Fourteenth Amendment due process rights by failing to give him certain post-revocation hearings, the court will, at this early stage, allow him to proceed on that claim.

The plaintiff also appears to be challenging the constitutionality of the restrictions of his extended supervision imposed by Dubois and allegedly condoned by Nelson. He states that Dubois imposed unduly restrictive conditions for his extended supervision, such as not allowing him to see his family. Dkt. No. 1 at 4-7. The plaintiff asserts that Nelson condoned Dubois's actions and did not allow the plaintiff to change parole agents. Id. at 4. He states that the defendants' actions effectively "hindered his rehabilitative goals." Id. It appears that the plaintiff is asserting that the defendants violated his First Amendment right to intimate association. Easterling v. Thurmer, 880 F.3d 319, 322 (7th Cir. Jan. 4, 2018).

The court does not know whether the court that sentenced the plaintiff imposed the conditions of which he complains. If so, and if the defendants were enforcing extended supervision conditions that the court specifically ordered, the defendants would be protected by absolute quasi-judicial immunity. See Henderson v. Bryant, 606 F. Appx 301, 304-05 (7th Cir. 2015). The court also notes that generally, parole and supervision agents have "broad discretion" in their role of ensuring parolees abide by the conditions of parole and progress toward prosocial behavior. Morrissey v. Brewer, 408 U.S. 471, 479 (1972). At

this point, however, the court will allow the plaintiff to proceed on his allegation that the defendants violated his First Amendment right to association.

        2.     Allegations of potential, future violations

The court will not allow the plaintiff to proceed his claims that he anticipated that the defendants would violate his rights in the future. For a person to have "standing" to sue in federal court, that person must show an "injury-in-fact." Teva Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp., 482 F.3d 1330, 1337 (7th Cir. 2007) (citations omitted). The person who is suing must show that he *has been* injured, not that he *might be* injured in the future. "[A] claim premised on future harm is not ripe 'if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Ill. League of Advocates for Developmentally Disabled v. Quinn, Case No. 13-c-1300, 2013 WL 3168758 at *1 (N.D. Ill. June 20, 2013) (quoting Harris v. Quinn, 656 F.3d 692, 700 (7th Cir. 2011)).

In his complaint, the plaintiff speculated that he would not be allowed to participate in the CORE meeting, or to have a lawyer represent him, before his upcoming release. He asked the court to require that he be given an opportunity to be heard on his likelihood of re-offending, and that the court require that he be allowed contact with his family. When the plaintiff filed the complaint, however, there had been no CORE meeting. He had not been denied the opportunity to attend the meeting, or to have a lawyer. While he claims that

Dubois told him that she would impose the same restrictive conditions upon him when released that she'd imposed in the past, that had not yet happened.

As the court has noted, the plaintiff since has been released to extended supervision.[2] Perhaps the plaintiff got to attend the CORE meeting. Perhaps he got to have a lawyer. Perhaps he is, even now, able to see his family. The plaintiff's claims that these things would not happen were not ripe, and did not show an injury-in-fact. They were speculations as to what might happen in the future. The court will not allow him to proceed on these claims.

If the plaintiff believes that the conditions of his current supervision violate the Constitution, he can file a separate petition for a writ of *habeas corpus*. Conditions of supervision are a form of custody, and a challenge to those conditions is an attack on the fact or duration of the plaintiff's confinement, which "is the traditional function of the writ of habeas corpus." Drollinger v. Milligan, 552 F.2d 1220, 1225 (7th Cir. 1977).

### III. Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. No. 5)

The plaintiff filed a petition for a temporary restraining order and preliminary injunction against the defendants. Dkt. No. 5. He asked the court to enjoin the defendants or any other "Agents" from having any contact with him during the pendency of this litigation; to enjoin the defendants from having any "third-party contact with him or any of his family members, friends, etc." during

---

[2] See Wisconsin Department of Corrections – Offender Locator, https://appsdoc.wi.gov/lop/home.do (last visited August 29, 2018).

the pendency of the litigation; to order him not "susceptible to any form of electronic monitoring software, to include by not limited to, GPS for Life pursuant to Wis. Stat. §301.48, electronic monitoring, EMP, etc.;" to allow him to live "wherever he feels would best assist him with his release;" and to be allowed to "attend group for his offense, wherever he feels would be most helpful to him." Id. at 2.

The court will deny this motion. To obtain injunctive relief, a party must show "that he has no adequate remedy at law or will suffer irreparable harm if the injunction is denied; that this harm will be greater than the harm the defendant will suffer if the injunction is granted; that the plaintiff has a reasonable likelihood of success on the merits; and that the injunction will not harm the public interest." Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 382-3 (7th Cir. 1984) (citations omitted). The plaintiff has not demonstrated that he will suffer irreparable harm, because as the court has found, he has not demonstrated that any harm at all will occur. He cannot demonstrate a reasonable likelihood of success on the merits as to his speculative claims of future injury.

Even if the plaintiff had met the requirements for injunctive relief, the relief he requests is far too broad. He asks the court to prohibit the defendants from having contact with him, although he is on supervision. He asks that the defendants have no contact with his friends or family. He asks to be allowed to attend group where he feels it most helpful, and that the court prohibit any

electronic monitoring. For all intents and purposes, the plaintiff asks the court to enter an injunction prohibiting him from being supervised. The court denies this request, and denies the plaintiff's motion for a temporary restraining order and a preliminary injunction.

**IV.     Motion to Appoint Counsel (Dkt. No. 4)**

The plaintiff asked the court to appoint counsel, arguing that he was unable to sufficiently litigate his case for several reasons. Dkt. No. 4. He stated that the case was factually complex; that the impending "conflicting opinions and various legal materials would confuse him" due to his lack legal knowledge; and that his imminent (now realized) extended supervision, which would result in a change in his daily schedule and various restrictions imposed by his parole agent, would leave him unable to investigate the facts of the case, issue subpoenas, or access a law library. Dkt. No. 4.

In a civil case, the court has discretion to decide whether to recruit a lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013).  First, however, the person has to make a reasonable effort to hire private counsel on their own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007).  In this district, a plaintiff can make that showing by contacting at least three lawyers and asking them to represent him, then providing the court with any rejection letters or other proof that his efforts did not succeed. Once the plaintiff has tried, and failed, to find counsel on his own,

14

the court then must decide "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). To decide that, the court looks, not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

The plaintiff has not shown that he has attempted to find an attorney on his own. For that reason, the court denies plaintiff's motion. Even if the plaintiff had demonstrated that he tried to find a lawyer on his own, the court would not appoint counsel for him right now. The next step is that the court will order the plaintiff's complaint served on the two defendants. They will then have an opportunity to answer or otherwise respond to the complaint. After that, the parties will exchange information about the plaintiff's allegations. The court is confident, given what the plaintiff has filed so far, that he can handle these duties on his own.

V.     **Conclusion**

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **DENIES AS MOOT** the plaintiff's motion for leave to use release account to pay initial partial filing fee. Dkt. No. 9.

The court **DENIES** the plaintiff's motion for a temporary restraining order and preliminary injunction. Dkt. No. 5.

The court **DENIES** the plaintiff's motion to appoint counsel. Dkt. No. 4.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court **ORDERS** the clerk's office to electronically send copies of the plaintiff's complaint and this order to the Wisconsin Department of Justice for service on defendants Agnes Dubois and Nathan Nelson.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court **ORDERS** defendants Dubois and Nelson to file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the plaintiff shall pay the $345.60 balance of the filing fee as he is able. The plaintiff may make payments in cash, by bringing them to the clerk's office at 517 East Wisconsin Avenue, Room 362, Milwaukee, WI 53202 between the hours of 8:30 a.m. and 4:30 p.m. He may pay by check or money order by making the check payable to Clerk, U.S. District Court, and bringing it or mailing it to the clerk's office. He may pay by credit card over the phone, by calling (4124) 297-3417 and asking for the cashier.

The court **ORDERS** that the parties shall not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that the plaintiff shall submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin, this 30th day of August, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**